UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KULVINDER SINGH,<br><br>    Plaintiff,<br><br>    v.<br><br>JOVITA CARRANZA, Administrator,<br>U.S. Small Business Administration,[1]<br><br>    Defendant. | No. 2:19–cv–1692–KJN PS<br><br>ORDER ON DEFENDANT'S MOTION<br>FOR SUMMARY JUDGMENT AND<br>PLAINTIFF'S MOTION TO AMEND<br><br>(ECF Nos. 32, 46.) |

    Pro se plaintiff, Kulvinder Singh (an attorney), brings this Title VII employment discrimination action against the head of the U.S. Small Business Association ("SBA").[2]  Plaintiff alleges that the SBA's decision not to re-hire him for a temporary attorney advisor position was motivated by discrimination based on his race, religion, and national origin.  (ECF No. 15 at 4-5.)

---

[1] The Clerk of Court is instructed to update the docket caption to reflect Ms. Carranza as the sole defendant in this action.  Ms. Carranza succeeded Linda McMahon as the Administrator of the U.S. Small Business Administration on January 14, 2020, so she is automatically substituted for Ms. McMahon.  See Fed. R. Civ. P. 25(d).  The docket also currently lists Scott Reynders as a defendant, but plaintiff has withdrawn his claim against Mr. Reynders pursuant to the parties' January 10, 2020 stipulation.  (ECF No. 11; see ECF No. 15.)  Finally, the U.S. Small Business Administration itself is not a proper defendant in this Title VII action arising from an application for federal employment.  See 42 U.S.C. § 2000e-16(c) (stating that "the head of the department, agency, or unit, as appropriate, shall be the defendant" in such an action).

[2] The parties consented to the jurisdiction of the Magistrate Judge for all purposes, under 28 U.S.C. section 636(a).  (See ECF Nos. 23, 24, 30.)

1

The government moves for summary judgment based on the Title VII statute of limitations codified at 42 U.S.C. § 2000e-5(f)(1).  (ECF No. 32.)  Plaintiff opposes that motion, and filed a cross-motion requesting leave to file a second amended complaint.  (ECF Nos. 33, 46.)  The government, in turn, opposes plaintiff's motion to amend.  (ECF No. 48.)  The court took both motions under submission pursuant to Local Rule 230(g).  (ECF No. 49.)  After carefully considering the written briefing, the record, and the applicable law, the court DENIES the government's motion for summary judgment and DENIES plaintiff's motion to amend.

**Background**[3]

In fall 2016, the SBA hired plaintiff as a temporary attorney advisor.  (ECF No. 15 at 5.)  That position concluded in January 2017.  (Id.)  Plaintiff reapplied for the position in fall 2017 but was not rehired.  (Id.)  Plaintiff was told by a former co-worker that the SBA's hiring attorney, Scott Reynders, would not be interviewing plaintiff for the position.  (Id.)  Plaintiff "deduced the real reason was Mr. Reynders did not want immigrants, in particular 'foreign looking' attorney advisors," based on comments Mr. Reynders allegedly made during plaintiff's previous SBA employment.  (Id.)

In November 2017, plaintiff contacted the SBA to initiate informal counseling regarding his claims of discrimination.  (ECF Nos. 32-2 ¶ 5; 32-4 at 3.)  After the informal counseling concluded, plaintiff filed a formal complaint of discrimination with the SBA on January 2, 2018.  (ECF Nos. 32-2 ¶ 6; 32-5.)  In April 2019, after an investigation, an Equal Employment Opportunity Commission ("EEOC") Administrative Judge found that plaintiff failed to establish that any discrimination had occurred.  (ECF Nos. 32-2 ¶¶ 9-13; 32-8; 32-11 at 10.)

On May 14, 2019, the SBA sent a letter to plaintiff adopting the Administrative Judge's decision as the agency's Final Order (the "right-to-sue letter").[4]  (ECF Nos. 32-2 ¶ 14; 32-12 at 2.)  The right-to-sue letter was mailed to plaintiff's address of record in Roseville, California.

---

[3] These facts are stated in a light most favorable to the non-moving party—here, plaintiff.  See Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1045 (9th Cir. 2002).

[4] Enclosed with the right-to-sue letter was a notice of appeal rights, which informed plaintiff of his right to file a civil action in district court "[w]ithin ninety (90) calendar days of receipt of the final order," if no appeal was first taken to the EEOC.  (ECF No. 32-12 at 27-28.)

(ECF Nos. 32-2 ¶ 16; 32-12 at 2; 32-13.) The letter was sent via USPS Certified Mail service, with return receipt requested. (ECF Nos. 32-2 ¶ 17; 32-3 ¶ 12; 32-13.)

The government provides as exhibits several USPS tracking records obtained from the USPS website showing the letter's delivery process. According to these records, the USPS first attempted to deliver the right-to-sue letter on Thursday, May 23, 2019. (ECF Nos. 32-2 ¶ 18; 32-14 at 3.) Because no one was present to sign for the delivery, the USPS left a notice of attempted delivery in plaintiff's mailbox. (ECF Nos. 32-2 ¶ 19; 32-14 at 3; 33 at 3[5].) The notice required plaintiff to "sign it and leave it in [his] mailbox for [his] mail carrier to attempt redelivery," and plaintiff did so. (ECF No. 33 at 3.)

According to plaintiff's declaration, he also went to the post office to try to retrieve the letter but was told the letter was out for delivery. (Id.) Plaintiff "believe[s] [his] trip to the post office was on May 28, 2019."[6] (Id.) The same day, plaintiff also called the EEOC headquarters in Washington, D.C., and "requested that they email or otherwise send a copy of that notice to [him] via regular mail." (Id.) But that request was refused, and he was instructed to wait to receive the letter from the postal service, as it was a certified mail delivery. (Id.)

On May 29, 2019, the USPS attempted to redeliver the right-to-sue letter. (ECF Nos. 32-2 ¶ 20; 32-14 at 2.) Again, because no authorized recipient was available, the USPS left another notice of attempted delivery at plaintiff's residence. (ECF Nos. 32-2 ¶ 21; 32-14 at 2.) Again, plaintiff signed the "slip" to request redelivery. (ECF No. 33 at 3.) In "late May 2019," plaintiff encountered his mail carrier and asked where was his "certified mail envelope". (Id.) The carrier said the item was not in his truck, nor was it at the post office because the carrier had taken it for redelivery but did not have it with him then. (Id.) Plaintiff asked when he could expect to receive

---

[5] With his opposition, plaintiff has neither indicated which facts in the government's Statement of Undisputed Facts are admitted or denied, nor has he provided his own Statement of Disputed Facts, as required by Local Rule 260(b). Plaintiff's opposition brief does, however, contain a two-page "Declaration" signed under penalty of perjury, providing additional details regarding the delivery of the right-to-sue letter. (ECF No. 33 at 3-4.) These details largely align with the government's narrative of events, and the declaration constitutes admissible evidence that may be considered in resolving the motion for summary judgment. See Fed. R. Civ. P. 56(c)(4).

[6] The court notes that Monday, May 27, 2019 was Memorial Day.

1  it and was told it would be redelivered on Monday, June 3, 2019. (Id.) On June 3, 2019, the

2  right-to-sue letter was successfully delivered to plaintiff, who personally signed for the delivery.

3  (ECF Nos. 32-2 ¶ 22; 32-13; 32-14 at 2.)

4      Plaintiff filed this suit on August 29, 2019, asserting Title VII claims against the SBA and

5  Mr. Reynders.[7] (ECF No. 1.) On January 23, 2020, the court approved the parties' joint

6  stipulation for plaintiff to file an amended complaint removing Mr. Reynders as an individual

7  defendant. (ECF Nos. 11, 12.) Accordingly, on February 20, 2020, plaintiff filed a first amended

8  complaint bringing only a Title VII claim against the head of the SBA. (ECF No. 15.) The

9  government filed its answer on April 10, 2020. (ECF No. 16.)

10      On August 20, 2020, the government filed the instant motion for summary judgment,

11  asserting that this action is barred by the 90-day statute of limitations provided in 42 U.S.C.

12  § 2000e-5(f)(1). (ECF No. 32.) Plaintiff filed an opposition to the summary judgment motion,

13  and the government filed a reply brief. (ECF Nos. 33, 36.) On October 2, 2020, the court vacated

14  a previously scheduled settlement conference and stayed discovery pending resolution of the

15  motion. (ECF No. 44.) On October 15, 2020, plaintiff filed a motion for leave to file a second

16  amended complaint, which the government opposes.[8] (ECF Nos. 46, 48.) The court consolidated

17  the hearings on the motions and subsequently took both matters under submission. (ECF Nos. 35,

18  49.)

19  **Discussion**

20      The two matters before the court are: (I) whether the government is entitled to summary

21  judgment as a matter of law on plaintiff's Title VII claim, based on the applicable statute of

22  limitations, and (II) whether to permit the addition of a cause of action under 42 U.S.C. § 1981

23  and the addition of Mr. Reynders as another defendant at this late stage of the litigation.

24  ///

---

[7] This was 98 days after the first attempt to deliver the right-to-sue letter on May 23, 2019, and 87 days after plaintiff actually received the letter on June 3, 2019.

[8] Plaintiff initially moved to amend on September 3, 2020. (ECF No. 34.) The court denied the motion for failure to comply with Local Rule 137(c) (requiring attachment of proposed amended complaint) but permitted plaintiff to file a compliant motion by October 15, 2020. (ECF No. 44.)

I.    **The Government's Motion for Summary Judgment**

**Legal Standard**

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Summary judgment (i.e. judgment as a matter of law) is proper when the movant demonstrates no genuine issue exists as to any material fact. Id. A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the suit under the governing law. United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A shifting burden of proof governs motions for summary judgment under Rule 56, as detailed below. Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits which demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir.2000). If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Id. at 1102-03 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

**Parties' Arguments**

The government maintains that the limitations period began to run on May 23, 2019, the date of the first attempted delivery of the right-to-sue letter, making plaintiff's suit 8 days late. (ECF No. 32-1 at 1.) Plaintiff does not dispute the government's overall timeline of events. (See

5

ECF No. 33.) But plaintiff describes his efforts to obtain the right-to-sue-letter and requests equitable tolling of the statute of limitations because there was "nothing [he] could do to receive the certified mail envelope but wait for redelivery." (Id. at 4.)

**Analysis**

To bring a Title VII claim against a federal employer, a civil suit must be filed in federal court within 90 days of receipt of notice of the agency's final action. 42 U.S.C. § 2000e-16(c); 29 C.F.R. § 1614.407(a). The 90-day period for filing suit is a statute of limitations, and, absent sufficient grounds for equitable tolling, an action will be barred if it was not filed within the limitations period. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 93-94 (1990). "Courts apply the ninety-day time limit strictly and will dismiss a suit for missing the deadline by even one day." Garrison v. Nike Inc., No. CV-17-00805-PHX-DLR, 2017 WL 2653051, at *2 (D. Ariz. June 20, 2017). "[B]ecause the statute of limitations is an affirmative defense, the defendant bears the burden of proving that the plaintiff filed beyond the limitations period." Payan v. Aramark Mgmt. Servs. Ltd. P'ship, 495 F.3d 1119, 1122 (9th Cir. 2007).

The government's sole theory for why this case is time-barred is that, in its view, Title VII's 90-day statute of limitations always "begins to run when the USPS first attempts delivery of the right-to-sue letter to the plaintiff's address of record." (ECF No. 32-1 at 4.) In support of its motion, the government relies almost exclusively on Nelmida v. Shelly Eurocars, Inc., 112 F.3d 380 (9th Cir. 1997), where the Ninth Circuit indeed applied a first-attempted-delivery rule. In deciding this motion, the court has carefully assessed whether the Nelmida first-attempted-delivery rule necessarily governs the present suit and concludes that it does not, for two reasons. First, the Nelmida rule is based on an interpretation of the general Title VII statute of limitations contained in 42 U.S.C. § 2000e-5(f)(1), instead of the specific statute of limitations provided for cases filed against federal employers, found at 42 U.S.C. § 2000e-16(c). And second, Nelmida's holding was tied to the plaintiff's failure to maintain a current mailing address on file with the EEOC, whereas no similar failure occurred here. Surprisingly, the government

///

///

acknowledges neither of these distinguishing features in its briefs, never once citing section 2000e-16(c).

### 1. Title VII's Separate Statute of Limitations for Federal Employers

Although section 2000e-5(f)(1) and section 2000e-16(c) now provide the same 90-day window for filing a Title VII complaint in federal court, they use markedly different language to describe when the filing period begins.  In cases brought against non-federal employers, the EEOC must notify the plaintiff of the outcome of the charge of discrimination filed with the EEOC, and the plaintiff must then bring a civil action "within ninety days after the giving of such notice." 42 U.S.C. § 2000e-5(f)(1) (emphasis added).  In cases brought against federal employers, however, the time for filing a civil action is "[w]ithin 90 days of receipt of notice of final action taken by" the employing agency or department.  42 U.S.C. § 2000e-16(c) (emphasis added).  Section 2000e-16(c) clearly applies in this case brought against the SBA, a federal agency, by plaintiff who is an aggrieved applicant for federal employment.  See 42 U.S.C. § 2000e-16(c) (governing civil actions by an "employee or applicant for employment" with the federal government).  And the government gives no explanation for its exclusive reliance on section 2000e-5(f)(1) instead.

In Nelmida, the Ninth Circuit held plaintiff's Title VII suit against her former employer (a private company) was time-barred because the complaint was filed more than 90 days after the USPS first attempted to deliver the right-to-sue notice.  112 F.3d at 381, 384 (holding that "the ninety-day period within which to file suit began running when delivery of the right-to-sue notice was attempted at the address of record with the EEOC . . . .").  Notably, because Nelmida involved Title VII claims against a private employer, the court was interpreting the "giving of [] notice" language of section 2000e-5(f)(1) in determining the statute of limitations starting point. Id. at 381, 383.  Relying on existing circuit precedent, the court recognized that "[t]he language of the statute establishes the 90-day period as running from the 'giving of notice' rather than from the date the claimant actually 'receives' notice in hand.'" Id. at 383 (quoting Scholar v. Pacific Bell, 963 F.2d 264, 267 (9th Cir. 1992)).  The court in Scholar had previously cued on section 2000e-5(f)(1)'s "giving of [] notice" language to hold that the statute of limitations for the

7

plaintiff's claims against her private employer began on the date her daughter received and signed for the right-to-sue letter at the plaintiff's residence.  See Scholar, 963 F.2d at 267.

Nelmida does not govern this case primarily because its first-attempted-delivery rule was created when interpreting an entirely different section of Title VII—namely, section 2000e-5(f)(1)—whose language contrasts with the language of the applicable statute of limitations provided in section 2000e-16(c).  Applying the Nelmida rule to this case would conflate the statutory language of section 2000e-5(f)(1)'s non-federal-employer filing deadline— which starts upon the "giving" of notice—with the language of section 2000e-16(c)'s federal-employer filing deadline—which starts upon "receipt" of notice.  It was precisely the "giving of such notice" language in section 2000e-5(f)(1) that led the Ninth Circuit in Scholar to reject a personal receipt requirement there.  See 963 F.2d at 267 (contrasting the statutory "giving of such notice" language with plaintiff's argument that the limitations period ran from the date she "actually 'receives' notice in hand").  And this distinction likewise guided the court in Nelmida toward adopting its first-attempted-delivery rule.  See 112 F.3d at 383 (discussing Scholar and quoting the above passage).  Because the filing deadline for this case is established by section 2000e-16(c), which turns not on the "giving" but rather on the "receipt" of notice, the logic of Nelmida and Scholar does not apply.

The only other Ninth Circuit case the government cites in its five-page memorandum in support of summary judgment is Payan, 495 F.3d 1119 (9th Cir. 2007).  (See ECF 32-1 at 1.)  In Payan—another Title VII case against a private employer—the Court of Appeals stated that "[w]e measure the start of the limitations period from the date on which a right-to-sue notice letter arrived at the claimant's address of record." 495 F.3d at 1122 (citing Nelmida, 112 F.3d at 384; Scholar, 963 F.2d at 267).  Although the court in Payan cited Nelmida in support of this proposition, it did so without explanation, and the decision does not clarify exactly what qualifies as the letter "arriv[ing] at" the address of record.  The very next sentence sheds some light on the meaning, stating "[w]here that date [of arrival] is known, we will deem the claimant to have received notice on that date, regardless of whether the claimant personally saw the right-to-sue letter." Payan, 495 F.3d at 1122 (citing Nelmida for "measuring the limitations period from the

8

post office's first attempted delivery at the claimant's address" and Scholar for calculating the period from the date the EEOC letter was "received and signed for" by the petitioner's daughter). Payan was mainly focused, however, on establishing a presumption of when a right-to-sue letter may be deemed to have arrived in circumstances where the plaintiff undisputedly received the letter but "the actual date of receipt is unknown." Id. at 1122-26 (adopting rebuttable presumption of receipt three days after issuance by the EEOC).  To the extent Payan can be read to interpret the first attempted delivery date as the date the letter "arrived at" the claimant's address (an argument the government does not make here), the undersigned is unwilling to import that interpretation onto the separate federal employer statute of limitations, which explicitly turns on the plaintiff's "receipt" of notice.  See 42 U.S.C. § 2000e-16(c).  Indeed, if Payan were directly applicable to the present case arising under the federal employer statute of limitations, the most straightforward conclusion would be that Mr. Singh's right-to-sue letter only "arrived at" his address of record on June 3, 2019, since on the previous delivery attempts the USPS simply left notification slips—not the letter itself—in his mailbox.

        The undersigned is aware of a handful of cases in this circuit that at least recite Nelmida's first-attempted-delivery rule when assessing the timeliness of actions against federal employers, notwithstanding the above-discussed differences in the applicable statutory text.  See, e.g., Arata v. Azar, No. CV-18-08071-PCT-SMB, 2019 WL 1382459, at *2 (D. Ariz. Mar. 27, 2019); Williams v. Perdue, No. C17-0280-JCC, 2017 WL 3142022, at *2 (W.D. Wash. July 25, 2017), aff'd, 731 F. App'x 726 (9th Cir. 2018); Homer v. Henderson, No. 00-3869-MMC, 2001 WL 228164, at *2-3 (N.D. Cal. Feb. 26, 2001).  But none of these cases address the origins of Nelmida's rule, which is clearly rooted in the "giving of" notice language of section 2000e-5(f)(1) as opposed to the "receipt" of notice language in section 2000e-16(c).  See Azar, 2019 WL 1382459, at *2 (citing Nelmida without discussion for the proposition that the limitations period for suing the agency "begins on the day that delivery is first attempted at the plaintiff's address of record, even if delivery is not completed at that time"); Homer, 2001 WL 228164 at *2-3 (finding complaint against postmaster general time-barred under § 2000e-16(c) but relying on Nelmida's and Scholar's discussions of the "giving of" notice language from § 2000e-5(f)(1), as well as out-

of-circuit cases against non-federal employers).[9]

Notably, in an unpublished memorandum opinion, the Ninth Circuit affirmed the dismissal of a U.S. Forest Service employee's Title VII action as time-barred where the employee did not file suit within 90 days of the USPS leaving a pick-up notification for his right-to-sue letter in his post office box. Williams v. Perdue, 731 F. App'x 726, 726-27 (9th Cir. 2018). The Court of Appeals cited Nelmida in support of its observation that the "postal notice was sufficient to demonstrate that [the employee] had received proper notice of the final order," within the meaning of section 2000e-16(c). Williams, 731 F. App'x at 726-27 & n.4. But the undersigned is unwilling to decide this motion based on this nonbinding precedent which also does not analyze the origins of Nelmida's rule, and which the government never cites in support of its motion.

### 2. *Maintaining a Current Mailing Address*

The second reason the court declines to apply Nelmida's rule here is that the statute of limitations dispute in Nelmida was caused by the plaintiff's failure to keep the EEOC informed of her current mailing address; whereas here Mr. Singh has maintained a current mailing address where he was ultimately able to receive the right-to-sue letter. In Nelmida, the right-to-sue notice was mailed to the plaintiff's parents' address where the plaintiff was no longer residing, and the plaintiff neglected to inform the EEOC of her whereabouts. 112 F.3d at 381-82. USPS left two separate notifications at plaintiff's parents' house that the certified mail was being held for pick-up at the post office, but because no one went to pick up the right-to-sue letter, it was ultimately returned to the EEOC as unclaimed. Id. at 384. Nelmida later requested and received a copy of the letter from the EEOC and then filed suit 90 days thereafter. Id. at 382.

In interpreting the "giving of [] notice" language of section 2000e-5(f)(1), the court in Nelmida relied on two sister circuit cases also involving (1) claims against private employers and (2) plaintiffs who failed to maintain a current mailing address with the EEOC. See id. at 383 (discussing St. Louis v. Alverno College, 744 F.2d 1314, 1315 (7th Cir. 1984); Banks v.

---

[9] In addition, the plaintiff in Homer waited a month to retrieve the right-to-sue letter from the post office after his son signed the USPS attempted delivery notification, whereas here, Mr. Singh went to the post office five days—indeed, two business days—after receiving the first attempted delivery notice. Id. at *3; (ECF No. 33 at 3.)

10

1    Rockwell Int'l N. Am. Aircraft Operations, 855 F.2d 324, 325 (6th Cir. 1988)).

2          In Alverno, the Seventh Circuit held the Title VII claims time-barred where the plaintiff
3    never received the original right-to-sue letter because he failed to update his address with the
4    EEOC, and only filed suit after receiving a copy of the letter 9 months after it was first issued.
5    744 F.2d at 1317. In the portion of the opinion quoted in Nelmida, the Seventh Circuit noted that
6    if the plaintiff had notified the EEOC that he had moved or otherwise "taken reasonable steps to
7    ensure that he would receive" mail delivered to his prior address, the statute of limitations period
8    might have started to run on the later date when he actually received the right-to-sue letter. Id.
9    But because plaintiff's "failure to tell the EEOC that he had moved was not an event beyond his
10   control," the statute of limitations began "on the date the notice was delivered to the most recent
11   address plaintiff provided the EEOC." Id.; see Nelmida, 112 F.3d at 383-84.

12         On almost identical facts, the Sixth Circuit in Banks held a Title VII action time-barred
13   because "where a claimant has failed to notify the EEOC of a change of address, the ninety-day
14   period begins running five days after the date on which the EEOC mailed the notice to the
15   claimant's address of record." Nelmida, 112 F.3d at 384 (citing Banks, 855 F.2d at 326). While
16   the Ninth Circuit in Nelmida did not adopt the Sixth Circuit's 5-day rule, its conclusion that the
17   statute of limitations "began running when delivery of the right-to-sue notice was attempted at the
18   address of record with the EEOC" is firmly based in the common fact of plaintiffs not
19   maintaining a current address with the EEOC and therefore never receiving the original right-to-
20   sue letter. Id. at 384 (citing Alverno, 744 F.2d at 1317).

21         The first-attempted-delivery rule makes good sense in such circumstances because courts
22   are loathe to reward negligent plaintiffs with extra time to file their cases. But the court sees no
23   reason to apply that rule here where plaintiff maintained a current address on file with the SBA
24   and received the original right-to-sue letter at that address through the USPS's normal certified
25   mail re-delivery process. (See ECF No. 33 at 3.) Through no fault of his own, plaintiff simply
26   was not present to sign for the letter during the post office's first two delivery attempts. And,
27   unlike the plaintiff in Nelmida, plaintiff did try to pick up the letter from the post office only two
28   ////

business days after receiving notice of the first attempted delivery.[10] (ECF No. 33 at 3.) The court therefore declines to apply Nelmida's first-attempted-delivery rule here, as doing so would penalize plaintiffs like Mr. Singh who have done all they can to receive their right-to-sue letter in due course.[11]

### 3. Timeliness under 42 U.S.C. § 2000e-16(c)

The court instead turns to cases applying the language of 42 U.S.C. § 2000e-16(c) to determine the starting date for the statute of limitations for plaintiff's Title VII claims against the SBA. The Ninth Circuit has not addressed whether multiple attempted deliveries of a right-to-sue letter affects the meaning of "receipt of notice" of final agency action in a case against a federal employer.[12] But other circuits have held that receiving a notification of an attempted certified mail delivery does not constitute "receipt of notice" sufficient to trigger section 2000e-16(c)'s statute of limitations. See Sousa v. N.L.R.B., 817 F.2d 10, 10-11 (2d Cir. 1987) (per curiam); Hornsby v. U.S. Postal Service, 787 F.2d 87, 91 (3d Cir. 1986).

In Sousa, the Second Circuit held that the statute of limitations began when the pro se plaintiff took his attempted delivery notification to the post office counter where he signed it and received his right-to-sue letter, not on the date when the attempted delivery notification was

---

[10] Assuming plaintiff's May 28, 2019 estimation is accurate, he tried to pick up the letter within two business days of receiving the attempted delivery notification on Thursday, May 23, since May 25-27, 2019 was Memorial Weekend.

[11] Several courts have expressed understandable concern that starting the statute of limitations from the date of actual receipt after previous attempted deliveries might allow plaintiffs to manipulate the filing period by delaying retrieval of the letter. See, e.g., Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 42 (4th Cir. 1993). But there is no indication of undue delay or manipulation by Mr. Singh here.

[12] Historically, the Ninth Circuit has held that a plaintiff's window to sue a federal employer "does not begin to run until the aggrieved party has received actual formal notification of [her] statutory right to sue in federal court. By this we mean receipt of the so-called 'Right-to-Sue' letter." Mahroom v. Hook, 563 F.2d 1369, 1374 (9th Cir. 1977) (holding that notifying an applicant for federal employment of the final agency decision without informing her of her right to sue did not start time limit for filing suit). But such cases did not involve multiple attempted deliveries of the right-to-sue letter and were decided when the deadline for filing suit against federal agencies was viewed as jurisdictional, rather than a statute of limitations, meaning that equitable tolling was not available.

placed in his post office box. 817 F.2d at 11. In so holding, the court specifically distinguished cases against private employers where constructive notice was held sufficient, highlighting the difference in the statutory text between section 2000e-16(c) and section 2000e-5(f)(1). See id.

In Hornsby, the Third Circuit held that leaving an attempted delivery notification at the plaintiff's home mailbox, which did not disclose the name or address of the sender, did not constitute "receipt of notice of final action," sufficient to begin the statute of limitations. 787 F.2d at 91. Indeed, the Third Circuit held the USPS attempted delivery notification form left in the plaintiff's mailbox "meaningless" for purposes of conveying notice of a final agency action because the notification "states simply that an unknown person has mailed a certified letter to the addressee." Id.

Here, the government has provided no evidence of what information was conveyed on the attempted delivery notification forms left in plaintiff's mailbox. The exhibits include a copy of one side of the PS Form 3811 that plaintiff ultimately signed on June 3, 2019, in order to receive the right-to-sue letter. (ECF No. 32-13.) But that side of the form includes no fields for identifying the sender, and even if the form did identify the SBA or EEOC as the sender on the reverse side, it is unclear whether this same form was left in Mr. Singh's mailbox on the prior delivery attempts.

Plaintiff's declaration indicates that he somehow knew or suspected that the attempted delivery was related to his discrimination claims, given that he called the EEOC to request an alternate method of delivery before receiving the letter. (ECF No. 33 at 3.) Other circuits have found a plaintiff's knowledge or even suspicion that an attempted delivery contained their right-to-sue letter sufficient to trigger the statute of limitations for suing non-federal employers under section 2000e-5(f)(1). See, e.g., Zillyette v. Capital One Financial Corp., 179 F.3d 1337, 1341-42 (11th Cir. 1999) (limitations period began to run three days after plaintiff's receipt of an attempted delivery notification advising him that a certified letter from the EEOC awaited him at the post office); Watts-Means v. Prince George's Family Crisis Center, 7 F.3d 40, 41-42 (4th Cir. 1993) (action was time-barred because the limitations period began when plaintiff received notice that she could pick up a letter at the post office, which she "suspected" was from the EEOC). But

the court declines to import these non-binding interpretations of Title VII's separate, and distinctly worded, statute of limitations for non-federal employers to bar Mr. Singh's action here.

Instead, the court follows the reasoning in Sousa, Hornsby, and the literal text of section 2000e-16(c). Especially in light of Title VII's remedial purpose, the statute of limitations for Mr. Singh's claims against the SBA cannot be viewed as starting earlier than the date when he actually received the right-to-sue letter informing him of the 90-day deadline to sue. It is undisputed that day was June 3, 2019, and Mr. Singh filed this action 87 days later on August 29, 2019. (ECF No. 32-2 ¶ 22; ECF No. 32-14 at 2.) The government has not met its burden to establish that this case was filed beyond the limitations period.[13] Consequently, the government's motion for summary judgment is denied.

## II.   Plaintiff's Motion to Amend the Complaint

Plaintiff moves for leave to file a second amended complaint to add:  (1) an additional defendant, the SBA hiring attorney Mr. Reynders, to plaintiff's existing Title VII claims against the SBA, and (2) a cause of action under 42 U.S.C. § 1981 against the SBA and Mr. Reynders. (ECF Nos. 46 & 46.1.)

**Legal Standard**

After the time has passed to amend as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15(a)(2) further provides that "[t]he court should freely give leave when justice so requires," id., and the Ninth Circuit has stated that "requests for leave should be granted with 'extreme liberality,'"—especially in the case of pro se litigants. Moss v. U.S. Secret Serv., 572 F.3d 962, 972 (9th Cir. 2009) (citation omitted).

However, the Ninth Circuit has also cautioned that "liberality in granting leave to amend is subject to several limitations," which include "undue prejudice to the opposing party, bad faith by the movant, futility, and undue delay." Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citations and quotation marks omitted); AmerisourceBergen Corp. v.

---

[13] Given this conclusion, the court need not address plaintiff's equitable tolling argument.

1  Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006).  Correspondingly, when the court requires
2  a showing of good cause for any further amendments to pleadings, the plaintiff is required to
3  satisfy this "good cause" standard to obtain leave to amend.  See Coleman v. Quaker Oats Co.,
4  232 F.3d 1271, 1294 (9th Cir. 2000); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604,
5  607-09 (9th Cir. 1992).

Finally, although the court generally liberally grants leave to amend in the earlier pleadings stage of the action, see Fed. R. Civ. P. 15(a)(2), a pending motion for summary judgment "weighs heavily" against allowing leave to amend.  Schlacter-Jones v. Gen. Tel. of California, 936 F.2d 435, 443 (9th Cir. 1991) (overruled in part on other grounds in Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 692 (9th Cir. 2001).  This limitation is because "[a] motion for leave to amend is not a vehicle to circumvent summary judgment."  Id.; see also Maldonado v. City of Oakland, 2002 WL 826801, at *4 (N.D. Cal. April 29, 2002) (noting the higher standard that a "substantial showing" be made to support the amendment once the opposing party has moved for summary judgment).

**Parties' Arguments**

Plaintiff argues that leave to amendment should be granted because "[a]fter some initial discovery and research, it now appears that there is a viable claim" under section 1981; and that, despite voluntarily removing Mr. Reynders as a defendant earlier, he now believes Mr. Reynders is "liable for violating [his] civil rights."  (ECF No. 46 at 3, 5.)  The government opposes plaintiff's proposed amendments on the grounds that Title VII provides the exclusive remedy for claims of discrimination in federal employment, and individual supervisors cannot be sued under Title VII.  (ECF No. 48 at 1-2.)

**Analysis**

Given plaintiff's failure to show good cause and the futility of the proposed amendments, the court denies plaintiff's motion to amend.

*1. Lack of Good Cause*

As plaintiff acknowledges, his original complaint included a Title VII claim against Mr. Reynders.  (ECF No. 1.)  However, in January 2020, plaintiff agreed to voluntarily withdraw Mr.

1  Reynders as an individual defendant (ECF Nos. 11, 12), and his First Amended Complaint
2  accordingly asserts only a Title VII claim against the SBA.  (ECF No. 15.)  In the present motion,
3  plaintiff does not adequately explain why leave to amend should now be granted.  Early on in the
4  case, plaintiff had knowledge of Mr. Reynders' potential involvement and still chose to remove
5  Mr. Reynders from this suit.  Plaintiff's conclusory statement that discovery has revealed that Mr.
6  Reynders "is liable" (ECF No. 46 at 4) is not enough to meet the good cause standard for
7  amendment.  See Ryan v. Editions Ltd. West, Inc., 786 F.3d 757, 767 (9th Cir. 2015) (affirming
8  denial of leave to amend where facts underlying the proposed claim had been known to the
9  plaintiff throughout the litigation); Johnson, 975 F.2d at 607–08 ("[T]he 'good cause' standard
10 primarily considers the diligence of the party seeking amendment.").

11       Plaintiff's proposed cause of action under 42 U.S.C. § 1981 suffers from this same defect.
12 Plaintiff states he "believes this claim needs to be brought now as it is arising out of and related to
13 the same facts" as his Title VII action.  (ECF No. 46 at 3.)  If that is so, the court sees no reason
14 why plaintiff would not have included a section 1981 claim in his original complaint, or the First
15 Amended Complaint.  Plaintiff provides no explanation for this omission, and offers no other
16 argument for why there is good cause to add this claim now, over one year after filing suit.  The
17 court thus finds unwarranted the addition of section 1981 claims as well.  See Kowalow v. Corr.
18 Servs. Corp., 35 F. App'x 344, 346 (9th Cir. 2002) ("This Court does not look favorably on
19 delayed motions to amend when the facts and theory have been known to the party seeking the
20 amendment since the beginning of the action."); Verducci v. Sonoma Valley Hosp. Dist., 87 F.3d
21 1325 (9th Cir. 1996) (unpublished) (affirming denial of leave to amend where the evidence relied
22 upon was known to plaintiff at least seven months prior to motion to amend).

23                      *2. Futility of the Amendments*

24       Moreover, plaintiff's proposed amendments to add Mr. Reynders and the section 1981
25 claims are both futile.  First, Mr. Reynders, the individual supervisor who plaintiff asserts made
26 the decision not to re-hire him, is not a proper defendant for a Title VII claim.  See 42 U.S.C.
27 § 2000e-16(c) (stating that in Title VII actions brought by applicants for federal employment, "the
28 head of the department, agency, or unit, as appropriate, shall be the defendant" (emphasis

1  added)). Mr. Reynders is not the head of the SBA. (That title belongs to Ms. Carranza, whom
2  the FAC already names as the defendant.) It would therefore be futile for plaintiff to add a
3  Title VII claim against Mr. Reynders.

4  The same is true of plaintiff's proposed section 1981 claims against the SBA and Mr.
5  Reynders. It has long been settled that, except in select circumstances inapplicable here, Title VII
6  "provides the exclusive judicial remedy for claims of discrimination in federal employment."
7  Brown v. Gen. Servs. Admin., 425 U.S 820, 835 (1976) (after analyzing congressional intent and
8  purpose of Title VII, upholding the dismissal of all race discrimination claims brought outside of
9  Title VII, including the plaintiff's § 1981 claims); see White v. Gen. Servs. Admin., 652 F.2d
10 913, 916-17 (9th Cir. 1981) (holding that 42 U.S.C. § 2000e-16 provided the exclusive remedy to
11 a federal employee asserting job-related racial discrimination, and affirming the dismissal of
12 claims premised on various civil rights statutes including § 1981). This principle applies to bar
13 non-Title VII claims against federal agencies and individual federal employees alike. See White,
14 652 F.3d at 916-17 (rejecting argument that Brown does not extend to actions against federal
15 officials acting in their individual capacities). Therefore, plaintiff's only legal recourse for any
16 racial discrimination that might have prevented his re-employment with the SBA is the Title VII
17 claim he has already asserted in the First Amended Complaint. Adding a section 1981 claim
18 against either the SBA or Mr. Reynders would be futile.

19 For these reasons, the court denies plaintiff's motion for leave to file a second amended
20 complaint.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment (ECF No. 32) is DENIED;
2. Plaintiff's motion to amend (ECF No. 46) is DENIED; and
3. The stay of discovery previously imposed (ECF No. 44) is lifted.

IT IS SO ORDERED.

Dated: December 28, 2020

.sing.1692

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

1